IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANGELA DAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-01036-CV-W-ODS |
| | ) |
| BLUE CROSS AND BLUE SHIELD | ) |
| OF KANSAS CITY, et al., | ) |
| | ) |
| Defendants. | ) |

<u>ORDER AND OPINION (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

## I. INTRODUCTION

Pending are the parties' cross motions for summary judgment. Docs. #38, 40. This action challenges a denial of health insurance benefits. Plaintiff is R.H.'s mother. Plaintiff and R.H., as Plaintiff's beneficiary, were insured under Blue KC's 2016 Health Benefits Certificate (2016 Certificate), and Blue KC's 2017 Health Benefits Certificate (2017 Certificate), through Plaintiff's employer.[1] The Plans were administered by Defendant Blue Cross and Blue Shield of Kansas City ("BCBSKC"), and governed by the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001, *et. seq.* ("ERISA"). Plaintiff alleges that BCBSKC improperly denied reimbursement for inpatient mental health treatment that R.H. received at the Elements Wilderness Program ("Elements") and Boulder Creek Academy ("Boulder Creek") from January 20, 2016, to March 17, 2017. For the following reasons, Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

## II. BACKGROUND
### A. R.H.'s Medical History and Treatment

---

[1] The 2016 Certificate and 2017 Certificate are collectively referred to as "the Plans" for purposes of this Order.

R.H. has a long history of mental health issues, including Obsessive Compulsive Disorder and an eating disorder, and behavioral problems, including anger outbursts and aggression towards family members and property.  Doc. #37, at 1229, 2663.  Before being insured by the Plans, R.H. had a history of outpatient, intensive outpatient, partial hospitalization, inpatient, and residential treatments.  *Id.*

On January 5, 2016, R.H. enrolled in a high school near St. Louis, Missouri, but withdrew on January 14, 2016.  *Id.*  On January 20, 2016, R.H. was admitted to Elements, located in Utah.  *Id.* at 1173.  The level of care at Elements is described as "intermediate outdoor use mental health treatment services".  *Id.* at 1229.  At Elements, R.H. received outdoor behavioral healthcare designed to help him build skills related to self-confidence, assertive communication, interpersonal relationships, and coping skill management.  *Id.* at 1220.  The documentation from the facility notes R.H. was not suicidal, homicidal, psychotic, or gravely disabled; he had a history of superficial self-harm behaviors; and he was taking his medications.  *Id.*  His eating disorder was described as being in full remission.  *Id.*  R.H.'s last day at Elements was March 17, 2016.  *Id.*  His discharge diagnoses included Autism Spectrum Disorder, Major Depressive Disorder, and Attention-deficit/hyperactivity disorder ("ADHD").  *Id.*

One day later, R.H. was enrolled at Boulder Creek, located in Idaho.  *Id.* at 1453, 2394.  At Boulder Creek, R.H. received focused academic and therapeutic resources to help him gain skills necessary to integrate back into his family and society at large.  *Id.* at 2159.  After a year of treatment, R.H. left Boulder Creek in March, 2017.  *Id.* at 2698.

**B.  R.H.'s Coverage Under the Plans**

R.H. is a participant in his mother's Plans, which BCBSKC funds and administers.  Under the proper circumstances, the Plans provide coverage for medical and behavioral health services including inpatient care, residential treatment, intensive outpatient program, and routine outpatient treatment.  The Plans specify that such coverage will only be provided for services that are "medically necessary."  Doc. #37, at 36, 198. Under the Plans, "medically necessary" means services and supplies which [BCBSKC], utilizing additional authoritative sources of information and expertise, determine are essential to the health of a covered person and are:

a. Appropriate and necessary for the symptoms, diagnosis and treatment of a medical or surgical condition;
   b. In accordance with Our local medical policies, which are consistent with acceptable medical practice according to the national Blue Cross and Blue Shield Association's uniform medical policy (as amended from time to time);
   c. Not primarily for the convenience of the Covered Person, nor the Covered Person's family, Physician or another provider;
   d. Consistent with the attainment of reasonably achievable outcomes; and
   e. Reasonably calculated to result in the improvement of the Covered Person's physiological and psychological functioning.

Doc. #37, at 22-23, 184-85. The Plans grant BCBSKC "full discretion and authority to interpret and apply the provisions" of the Plans. *Id.* at 107, 269. Regarding mental health treatment and services, the Plans state that services "for inpatient services are limited to Hospital and Physician services when [the covered person is] confined to any Hospital or other residential facility licensed to provide such treatment. **Inpatient and Residential Mental Illness and Substance Abuse Services must be Prior Authorized by New Directions**." *Id.* at 51, 217 (emphasis in original).

New Directions Behavioral Health, L.L.C., which is also named as a defendant in this matter, provides managed behavioral health care services for BCBSKC. Doc. #1, at 3. New Directions utilizes Medical Necessity Criteria for BCBSKC's health plans, which contain specific guidelines about various levels of treatment and what constitutes the medical need for specific levels of treatment. Doc. #37, at 320-86. The Plans allow a member to request a retrospective review to determine medical necessity. *Id.* at 25, 111, 187, 273. The Plans also allow for external review of benefit denials:

> You or Your representative has the right to file a grievance concerning an Adverse Determination with the Missouri Department of Insurance (the Department). If the Department determines a grievance is unresolved after completion of its consumer complaint process, the Department will refer the unresolved grievance to an independent review organization. ("IRO").
> . . .

3

> After the Department receives the IRO's opinion, it will issue a decision
> which will be binding upon You and Us.

*Id.* at 116, 278.

### C. Review of Plaintiff's Claims for Reimbursement

Plaintiff received BCBSKC's Explanation of Benefits ("EOB") informing her that billed charges from Right Direction Crisis Intervention, which provided transportation services to R.H. regarding his admission to Elements, were denied because the services were not medically necessary and not covered under the Plans. *Id.* at 387-90. Plaintiff also received BCBSKC's EOBs informing her that billed charges from Elements and Boulder Creek were denied because Plaintiff did not first obtain prior authorization and/or a referral was not obtained. *Id.* at 391-400, 1255-78.

On May 17, 2016, Plaintiff requested retrospective reviews of BCBSKC's denial of benefits regarding Elements and Boulder Creek. *Id.* at 401-02, 1287-88. A board certified psychiatrist with New Directions completed a review. *Id.* at 485, 1429. It was determined the residential treatment provided at Elements and Boulder Creek were not medically necessary, and R.H.'s care could have been provided in a less intensive level of care. *Id.* Plaintiff then submitted a Level One Member Appeals to New Directions regarding the Elements and Boulder Creek benefit denials. *Id.* at 497-509, 1441-51.

New Directions retained Prest & Associates, Inc. ("Prest"), an independent review organization, to perform independent physician reviews of the benefits decisions. *Id.* at 2662-67. Dr. Khalid L. Afzal, who was affiliated with Prest, determined that, with regard to services R.H. received at Boulder Creek, "According to the New Directions Psychiatric Residential Criteria-PR, the patient does not meet medical necessity criteria #2, #4 and #5 as of 03/18/16." *Id.* at 2662-66. Dr. Barbara Center, also affiliated with Prest, determined that, with regard to services R.H. received at Elements, "The patient does not meet New Directions medical necessity criteria for admission to the mental health residential treatment level of care as requested (Psychiatric Residential Criteria-PR Admission Criteria 3, 4, or 5 not met) as of 01/20/16." *Id.* at 1227-30. At the conclusion of this review, New Directions sent Plaintiff letters regarding Elements and

4

Boulder Creek stating, "on behalf of Blue Cross Blue Shield of Kansas City," based upon the review of all submitted information and documentation, we have upheld our decision denying benefits. *Id.* at 1231, 2669.

On October 12, 2016, Plaintiff requested an independent external review of R.H.'s residential treatment benefit denial claims at Elements and Boulder Creek with the Department of Insurance ("Department"). *Id.* at 1241-45, 2653-57. On February 8, 2017, the Department's independent reviewer, MAXIMUS Federal Services, Inc., informed the Department that BCBSKC's denial of coverage for these services should be upheld. *Id.* at 1252-53. On February 10, 2017, the Department informed Plaintiff that the "Director of the Department of Insurance, Financial Institutions and Professional Registration is unable to issue an order to overturn the company's decision under these circumstances." *Id.* at 1254. Pursuant to the Plans, this letter was binding on Plaintiff and BCBSKC. *Id.* at 278.

### III. STANDARDS
#### A. Summary Judgment

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). Inadmissible evidence may not be used to support or defeat a motion for summary judgment. *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (citation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). "[A] nonmovant

may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

## B. Standard of Review

The parties have focused intensely on the issue of which standard of review the Court should apply in reviewing Defendants' decision to deny Plaintiff benefits. Under ERISA, the default standard of review is de novo. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). However, if the plan gives its administrators discretion to interpret and implement it, the reviewing court should apply an abuse of discretion standard of review to the plan administrator's decisions. *Id.* It is undisputed that the Plans give BCBSKC discretionary authority to interpret the Plans and make the final determination regarding whether a plan participant is entitled to benefits. The Plans state, "The Employer has no discretion to determine eligibility or construe the plan Benefits. This function is Our responsibility. We reserve full discretion and authority to interpret and apply the provisions of Your Contract to the extent permitted by law." Doc. #37, at 107, 269.

Plaintiff argues the standard of review should be de novo because the decision to deny benefits was made by New Directions and the clear language of the Plans state that BCBSKC, and only BCBSKC, has discretionary authority to determine eligibility for benefits and construe the terms of the Plans. *Id.* at 27, 107. Specifically, Plaintiff argues BCBSKC took no part in the benefit denial decisions, and alleges New Directions made initial and appeal decisions without any discretion given to it in the Plans. The Court disagrees. Plaintiff disregards BCBSKC's initial denials of Plaintiff's benefit claims based on lack of prior authorization, as well as BCBSKC's denials after the second level of appeal. Doc. #37, at 387-90, 391-400, 1255-78. Plaintiff's argument focuses on the retrospective review conducted by New Directions, which occurred after BCBSKC denied Plaintiff's benefit claims.

Additionally, ERISA allows a fiduciary to delegate fiduciary duties. *Burke v. Heartland Health*, No. 08-6049, 2008 WL 11429293, at *3 (W.D. Mo. Oct. 27, 2008). Whether an entity has been delegated fiduciary duties must be determined by focusing

6

on the function performed, rather than the title held. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). If an entity has "any discretionary authority or responsibility in the administration of such plan," it has been delegated fiduciary duties, and may be considered a fiduciary, under ERISA. 29 U.S.C. § 1002(21)(A). Congress intended the definition of fiduciary under ERISA to be broadly construed. *Kerns v. Benefit Tr. Life Ins. Co.*, 790 F. Supp. 1456, 1460 (E.D. Mo. 1992), *aff'd*, 992 F.2d 214 (8th Cir. 1993).

The Plans do not explicitly designate New Directions as a fiduciary. However, the Plans give New Directions discretion to perform intake services designed to provide crisis intervention, assessment, benefits management, and referral services. Doc. #39, at 55, 217. The Plans also give New Directions prior authorization responsibilities. Doc. #39, at 55, 217. The authority to handle benefit management requires exercise of discretion, interpretation of plan terms, and making benefit determinations, all of which are essential components to handling claims. *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 827 (8th Cir. 2014). Additionally, New Directions' phone number is listed on R.H.'s health insurance card. Doc. #39-4. Where a named fiduciary properly delegates its discretionary authority to an ERISA-fiduciary, the decisions of the ERISA-fiduciary are reviewed for an abuse of discretion as well. *Rodriguez–Abreu v. Chase Manhattan Bank N.A.,* 986 F.2d 580, 584 (1st Cir.1993); *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1283-84 (9th Cir.1990). Therefore, the Court will review Defendants' decisions for an abuse of discretion.

When applying the abuse of discretion standard, the Court must determine whether the administrative body's decision was arbitrary and capricious. If the denial was reasonable, Defendants' decision must not be disturbed, even if a different reasonable interpretation could have been made. *Midgett v. Wash. Group Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009). A reasonable decision is supported by substantial evidence or such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir. 2004). This standard does not permit the Court to reject the administrative decision because the Court disagrees. *Campos-Holmer v. Standard Life Ins. Co.*, 370 F. Supp. 2d 912, 916 (W.D. Mo. 2005).

## IV.  DISCUSSION
### A.  Plaintiff's Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B)
#### (1) Plaintiff did not Obtain Prior Authorization

Plaintiff did not obtain prior authorization for R.H.'s treatment at Elements and Boulder Creek, as required by the Plans.  The Plans state, "**Inpatient and Residential Mental Illness and Substance Abuse Services must be Prior Authorized by New Directions**."  Doc. #37, at 55,132 (emphasis in original).  Before R.H. was admitted for any inpatient or residential mental illness and substance abuse service, Plaintiff should have first obtained and received prior authorization.  She failed to do so.

Plaintiff argues Defendants' "no prior authorization" defense is a post hoc rationale.  However, the administrative record establishes Plaintiff knew by May 17, 2016, that reimbursement for treatment at Elements was denied in its entirety due to lack of pre-authorization.  Doc. #37, at 401.  In fact, the BCBSKC EOBs sent to Plaintiff regarding Elements stated, "your benefits have been reduced for this service because prior authorization was not obtained," and "services are not covered under your health insurance plan because authorization and/or a referral was not obtained."  *Id.* at 391-400.  Similarly, Plaintiff knew by June 13, 2016, that reimbursement for treatment at Boulder Creek was denied in its entirety due to lack of pre-authorization.  *Id.* at 1287.  The BCBSKC EOBs sent to Plaintiff regarding Boulder Creek stated, "services are not covered under your health insurance plan because authorization and/or a referral was not obtained."  *Id.* at 1255-78.  The Plans unambiguously state covered services do not include, and no benefits will be provided for, services or care that are subject to the prior authorization requirement and such approval was not obtained.  *Id.* at 73, 235.

Plaintiff argues the Court should reject Defendants' "lack of prior authorization" defense because the final denial letters never mentioned a lack of prior authorization as a reason for denial.  The Court reviews the administrator's final claims decision, not the initial denial letter to ensure development of a complete record.  *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emples.*, 812 F.3d 628, 634 (8th Cir. 2016).  Plaintiff fails to acknowledge she did not appeal the benefit denials based on lack of prior authorization.  Rather, Plaintiff only sought retrospective review for the

benefit claims based on medical necessity. Therefore, BCBSKC's EOB letters denying Plaintiff's claimed benefits for lack of prior authorization are final benefit determinations.

### (2) R.H.'s Treatment was not Medically Necessary

The Plans clearly cover only treatments that are "medically necessary." Doc. #37, at 36,198. Multiple reviews by licensed physicians were conducted on behalf of BCBSKC, and all physicians determined the services R.H. received at Elements and Boulder Creek were not medically necessary. *Id.* at 485, 1227-30, 1429, 2662-66. This determination was then confirmed by (1) an independent external review commissioned by Maximus Federal Services, Inc., and (2) a second external review commissioned by the MES Peer Review Services appeal grievance panel. *Id.* at 1252-53, 2697-709. The administrative record establishes the Medical Necessity Criteria, documents submitted by Plaintiff, the Plans, and other information were relied upon to determine benefit eligibility. New Directions provided Plaintiff with each reviewer's opinion, including access to the documents and information relied upon by each reviewer.

Plaintiff argues the New Directions' "Medical Necessity Criteria" upon which the reviewing physicians relied when making their determinations should have been included in the Plans. BCBSKC is obligated to provide Plaintiff with a plan document intended to be a summary in lay terms of specified plan provisions. *See* 29 U.S.C. § 1022. However, disclosures required to be made in summary plan documents are limited to specified items, none of which have anything to do with particularized criteria used to determine the medical necessity of requested services. *See Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1292 (10th Cir. 1999). ERISA's disclosure provisions do not require a plan summary contain particularized criteria for determining the medical necessity of treatment for individual illnesses. *Id.* "Such a requirement would frustrate the purpose of a summary – to offer a layperson concise information that she can read and digest." *Id.* BCBSKC was not required to include the specific medical necessity criteria in the Plans.

Next, Plaintiff argues the reviewing physicians applied the wrong criteria to determine medical necessity under the New Directions criteria. New Directions has criteria for five levels of treatment for mental illness, which are distinct from substance

abuse and eating disorder treatment. Those levels are Psychiatric Acute Inpatient Criteria, Psychiatric Residential Criteria, Psychiatric Partial Hospitalization Criteria, Psychiatric Intensive Outpatient Criteria, and Psychiatric Outpatient Criteria. *Id.* at 321. When reviewing Plaintiff's claims, New Directions applied the criteria for Psychiatric Residential Criteria. Elements and Boulder Creek are both residential treatment facilities as that term is defined under New Directions intensity of service. Nothing in the record suggests that the reviewing physicians did not follow the Psychiatric Residential Criteria when making their determinations. Therefore, Plaintiff's argument fails.

Lastly, Plaintiff argues New Directions' denial letters did not provide a sufficient basis for her to challenge its decisions. The Court disagrees. New Directions' letters not only explained the basis of its denials, but also offered Plaintiff the option to submit additional information to support her claim. New Directions also provided Plaintiff with each reviewer's opinions, as well access to the documents and information relied upon by each reviewer. New Directions' denial letters were therefore sufficient under ERISA and the Plans.

Ultimately, Defendants' decisions were reasonable and appropriate. The medical necessity criteria upon which the reviewing physicians relied is an appropriate means of determining the level of care required by an individual plan participant. All reviewing physicians determined R.H.'s treatment was not medically necessary. Moreover, the Department of Insurance confirmed Plaintiff's benefit denials should be upheld. Pursuant to the Plans, the Department's denial was binding on Plaintiff and BCBSKC. For these reasons, this Court cannot conclude Defendants' decision to deny coverage for R.H.'s treatment at Elements and Boulder Creek was irrational. Defendants' motion for summary judgment on Count I is granted, and Plaintiff's motion for summary judgment on Count I is denied.[2]

---

[2] Defendants argue Plaintiff should be barred from seeking benefits regarding Right Direction's transportation services due to her failure to exhaust administrative remedies. But Plaintiff does not seek benefits regarding Right Direction's services. Therefore, the Court will not address this argument.

## B. Plaintiff's Equitable Relief Claim

Defendants argue Plaintiff's Count II is duplicative of Count I, entitling Defendants to summary judgment on Count II. Plaintiff relies on 29 U.S.C. § 1132(a)(1)(B) for Count I, and 29 U.S.C. §1132(a)(3) for Count II. Section 1132(a)(1)(B) provides "[a] civil action may be brought by a participant or beneficiary to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(3) states:

> [a] civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). Defendants argue Plaintiff seeks the same remedies in both Count I and Count II.

The Eighth Circuit has concluded duplicate recoveries are prohibited when a more specific section of the statute, such as section 1132(a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, section 1132(a)(3). *Silva v. Metro. Life*, 762 F.3d 711, 726 (8th Cir. 2014). Plaintiff's section 1132(a)(1)(B) claim is premised on Defendants' allegedly incorrect application of New Directions' medical necessity criteria, and her belief that benefits were payable because the treatment received at Elements and Boulder Creek was medically necessary. Plaintiff's section 1132(a)(3) claim is premised Defendants allegedly breaching their fiduciary duty by not paying for R.H.'s treatment. According to Plaintiff, under the Plans, most mental health treatment services by out of network providers, whether inpatient or outpatient, are paid at the same rate. Defendants agree Plaintiff had options for appropriate lower levels of care to address R.H.'s medical condition and meet coverage criteria. Plaintiff argues that if Defendants were to pay for a lower level of care, then they would have paid the same amount for the treatment they agree was medically necessary as they would have paid for the denied benefits which they believe were not medically necessary. Plaintiff claims BCBSKC should pay her because the

11

administrative record establishes R.H. should not have gone to Elements and Boulder Creek, but some lower level of care.

The Court is not persuaded. There is nothing in the Plans or administrative record supporting Plaintiff's argument. Furthermore, Plaintiff is not entitled to payment for benefits not received – i.e., the cost of receiving care at a lower level care facility from which Plaintiff did not seek any treatment. Therefore, the Court grants Defendants' motion for summary judgment on Count II.

## V. CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

DATE: February 11, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT